UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

GARY BENSON                                                                                              PLAINTIFF

v.                                          No. 5:17-CV-05112

KENNAMETAL, INC.                                                                                     DEFENDANT

## OPINION AND ORDER

Before the Court is Defendant Kennametal, Inc.'s motion (Doc. 13) for summary judgment. Defendant filed a statement of facts (Doc. 14) and brief (Doc. 15) in support. Plaintiff Gary Benson filed a response (Doc. 16) in opposition, as well as a responsive statement of facts (Doc. 17) and brief (Doc. 18). Defendant filed a reply (Doc. 19). The motion will be granted.

The facts in Defendant's statement of facts that are material to resolution of this motion are either undisputed, though Plaintiff has clarified some of these, or if Plaintiff disputes them, he does not adequately support the dispute with citations to the record that would demonstrate his dispute is genuine. Plaintiff entered Defendant's employ in 1973. From 2008 on, Plaintiff worked in Defendant's Rogers North Plant in Rogers, Arkansas. Plaintiff was classified as a machinist in the extrusion dies area, and his job was involved with the pelletizing of die plates. Plaintiff was supervised by Paul Tompkins. Plaintiff's floor lead, to whom Tompkins delegated some supervisory duties, was Jeff Farar. Between September 2013 and March 2015, Plaintiff was the target of unwelcome behavior from his coworkers, including Farar. In September 2013, when Plaintiff was ill and had been losing weight, Farar duct-taped Plaintiff hands to a forklift steering wheel, saying he "just felt the urge that [he] needed to do this at the moment." (Doc. 13-1, p. 13 (Deposition of Gary Benson, p. 49:11–13 (May 22, 2018))). In late 2013, Plaintiff took a six-month paid medical leave, returning to work in April 2014.

1

In October 2014, Farar snuck up on Plaintiff while wearing a President Obama Halloween mask, wrapped his arms around Plaintiff, and mimed kissing Plaintiff's face. (*Id*. at 16–17 (Benson Dep. pp. 63:1–65:8)). Sometime prior to March 2015, someone also taped a sign to the back of Plaintiff's vehicle indicating that Plaintiff had voted for President Obama two times, and Farar and another employee, Jason Cook, told vendors and customers that Plaintiff was a two-time voter for President Obama. (*Id*. at 17–18 (Benson Dep. pp. 68:12–73:3)). In November 2014, Farar snuck up behind Plaintiff, spun him around in his chair, and grabbed Plaintiff, touching his crotch. (*Id*. at 19 (Benson Dep. pp. 75:12–77:15)). In December 2014, Farar "grope-slapped" Plaintiff's buttocks while Plaintiff was bending over inspecting a die plate. (*Id*. at 21–22 (Benson Dep. pp. 84:8–85:21)). In January 2015, Plaintiff arrived at work to find banana peels and tampons on his computer and keyboard and a pair of soiled panties on his monitor. (*Id*. at 23 (Benson Dep. pp. 90:20–91:11)). In February 2015, Farar told assembled employees that Plaintiff would soon be working in carbide assembly where old people go before they retire. (*Id*. at 25 (Benson Dep. pp. 97:23–98:18)). In early 2015, while Plaintiff was traveling to Arizona, the "back carriage" of his vehicle fell off because 13 screws were missing; because the only other place Plaintiff drove the vehicle was to Defendant's parking lot, the screws were likely removed by Defendant's employees. (*Id*. at 31–32 (Benson Dep. pp. 123:5–125:16)).

In April 2015, Defendant moved Plaintiff to the shop floor in order to crosstrain another employee who had covered for Plaintiff during his medical leave in the quality control inspection position. (*Id*. at 26–28 (Benson Dep. pp. 104:19–109:18)). In June 2015, while Plaintiff was on the shop floor, another employee, Tony Almarez, jabbed Plaintiff's ribs. (*Id*. at 28–29 (111:12–113:11)). In October 2015, Plaintiff was told by Tompkins that Plaintiff and the other employee would begin alternating months as quality control inspector beginning in November.

Plaintiff received annual pay increases, no pay cuts, and no changes in benefits while he was employed by Defendant. In August 2015 Plaintiff was disciplined based on a complaint from another employee, who said Plaintiff had been offensive to her about her national origin. That same month, Plaintiff was again disciplined, this time based on the complaint of another employee who said Plaintiff was making fun of his ethnicity and traditions. Plaintiff was placed on paid administrative leave in September 2015 for the purpose of meeting with a counselor affiliated with Defendant's employee assistance program. During that administrative leave, Plaintiff called Defendant's ethics hotline telephone number and reported the harassment he had previously reported to Tompkins. Defendant investigated and issued written warnings to Tomkins and Farar. After Plaintiff returned to work, he reported no new harassment. In July 2016, a third employee complained about Plaintiff's behavior, claiming Plaintiff had been intimidating and bullying him. Another of Defendant's employees claimed he had witnessed that behavior. Plaintiff disputed that this activity had occurred, but Defendant investigated and decided the complaints were credible.

Plaintiff was fired on August 15, 2016. On February 8, 2017, he filed an EEOC charge of discrimination. (Doc. 16-8). On March 23, 2017, the EEOC issued a dismissal and notice of rights. (Doc. 16-7). Plaintiff filed his complaint in this action on June 21, 2017, alleging employment discrimination on account of sex, age, and disability, and retaliation in violation of Title VII of the Civil Rights Act, the Age Discrimination in Employment Act (ADEA), the Americans with Disabilities Act (ADA), and the Arkansas Civil Rights Act (ACRA).

Plaintiff's federal sex, age, and disability discrimination claims premised on a hostile work environment or any other act other than termination of his employment are time-barred. Title VII, the AEDA, and the ADA all require plaintiffs to exhaust administrative remedies before brining suit by filing a charge of discrimination with the EEOC within 180 days after the alleged

discrimination occurred. *Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911, 919–20 (8th Cir. 2018) (citing cases and statutes). Unlawfully discriminatory hostile work environments constitute a continuing violation, and so an EEOC charge may reach back from the date of the last act that is part of the hostile work environment to encompass activity that occurred longer than 180 days before the charge was filed. *Id*. at 920.

> By contrast, "[a] termination is a discrete act, not a continuing violation." *Hutson v. Wells Dairy, Inc.*, 578 F.3d 823, 826 (8th Cir. 2009) (citing [*Passenger Corp. v.*] *Morgan*, 536 U.S. [101,] 114, 122 S.Ct. 2061 (2002) ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'")). The "termination occurs—and thus triggers the start of the limitations period—on the day it happens." *Id*. (citing *Morgan*, 536 U.S. at 110, 122 S.Ct. 2061). The termination "day is when the employer notifies the employee of the decision to terminate [his or] her employment." *Id.* (citations omitted). "Each discrete act is a different unlawful employment practice for which a separate charge is required." *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851 (8th Cir. 2012 (per curiam) (citing *Morgan*, 536 U.S. at 114, 122 S.Ct. 2061); *see also Betz v. Chertoff*, 578 F.3d 929, 937–38 (8th Cir. 2009) (also applying *Morgan* in the ADEA context).

*Id*. at 920.

Plaintiff's EEOC charge was filed on February 8, 2017. Discrimination occurring on August 11, 2016, or earlier is outside the limitations period unless it is part of a continuing violation that ended within the limitations period. The only act of discrimination or retaliation that Plaintiff has identified (either in his deposition or in his affidavit submitted in response to the motion for summary judgment) that is within the 180-day period before his EEOC charge was filed is the termination of his employment on August 15, 2016. This termination was a discrete act, not a continuing violation encompassing the earlier discriminatory or retaliatory actions of Defendant or its employees. *Moses*, 894 F.3d at 920.

With respect to Plaintiff's federal discrimination and retaliation claims premised on termination of his employment, and assuming without deciding that Plaintiff can state a prima

4

facie case of discriminatory or retaliatory discharge, Defendant has articulated a nondiscriminatory reason for this discharge. Defendant believed Plaintiff was violating company policy by asking other employees about national origin, being rude to other employees, making fun of other employees' ethnicity or traditions, and after having been warned off this misconduct, bullying a Hispanic employee.

Although Plaintiff disputes some of his own accused misconduct occurred, he does not cite anything in the record from which a reasonable factfinder could infer that Defendant's articulated reason for termination of Plaintiff's employment was pretext for unlawful discrimination or that his protected conduct was the "but for" cause of Defendant's decision to terminate his employment.

Plaintiff has identified other employees who were rude to him or physically bullied him, such as Farar and Almarez, who were not fired as a result of their misconduct. Plaintiff has failed to show that these employees received disparate treatment because he has not cited evidence that Defendant received reports of their misconduct after having previously warned them against continuing with that behavior.

Plaintiff submitted an affidavit with his response to the motion for summary judgment in which he states other employees violated Defendant's policies by using their cell phones on the shop floor and they were not disciplined. After Plaintiff was asked twice in his deposition to identify any of Defendant's employees who he believed were treated differently than him with respect to termination of employment, and after his attorney objected twice because he (Plaintiff's attorney, not Plaintiff) could not understand the question or believed it vague or ambiguous, Plaintiff ultimately answered that he either could not identify employees who were treated differently, or would not. (Doc. 13-1, p. 44 (Benson Dep. pp. 174:18–175:21)). This sudden

change in what Plaintiff is able to disclose is not explained in the affidavit, and it does not preclude summary judgment. "[A] district court may grant summary judgment where a party's sudden and unexplained revision of testimony creates an issue of fact where none existed before. Otherwise, any party could head off a summary judgment motion by supplanting previous depositions *ad hoc* with a new affidavit, and no case would ever be appropriate for summary judgment." *Wilson v. Westinghouse Elec. Corp.*, 838 F.2d 286, 289 (8th Cir. 1988).

Even if this sworn statement in Plaintiff's affidavit is considered, violation of Defendant's cell phone policy is not the reason Defendant gave for terminating Plaintiff's employment. Because the other employees were treated differently than Plaintiff with respect to a policy violation unrelated to the violation for which Defendant gave for terminating Plaintiff's employment, any disparate treatment is not enough to raise a genuine dispute as to whether Defendant's articulated reason was pretext for unlawful discrimination.

Plaintiff also cannot show Defendant's articulated reason for terminating Plaintiff's employment was pretextual at all, whether for unlawful discrimination or a lawful, but distasteful, reason. Plaintiff cites nothing in the record that creates a genuine dispute of material fact as to whether Defendant believed Plaintiff's misconduct occurred. *See Macias Soto v. Core-Mark International, Inc.*, 521 F.3d 837, 842 (8th Cir. 2008) ("In determining whether a plaintiff has produced sufficient evidence of pretext, the key question is not whether the stated basis for termination actually occurred, but whether the defendant believed it to have occurred."). Therefore, Plaintiff cannot show that his protected conduct, rather than the policy violation Defendant believed had occurred, was the "but for" cause of Defendant's decision to terminate Plaintiff's employment. *See University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 343, 360 (2013) (Title VII and ADEA plaintiffs must meet "but for" causation standard to

succeed on retaliation claims); *Moses*, 894 F.3d at 924 (ADA plaintiff must meet "but for" causation standard to succeed on retaliation claim).

Because Plaintiff's federal claims of discrimination and retaliation premised on any act other than termination of his employment are time-barred, and because Plaintiff does not cite to evidence that would allow a factfinder to determine that Defendant's articulated reason for terminating Plaintiff's employment was pretext for unlawful discrimination, or that Plaintiff's protected conduct was the "but for" cause of termination of his employment, judgment for Defendant on Plaintiff's federal claims is proper.

Because the Court is granting summary judgment to Defendant on all of Plaintiff's federal claims, it will dismiss without prejudice the state law claims over which it is exercising supplemental jurisdiction. 28 U.S.C. § 1367(c); *Brown v. Mortgage Electronic Registration Systems, Inc.*, 738 F.3d 926, 933 (8th Cir. 2013). Neither party's briefing demonstrates whether continuing violations extend the ACRA limitations period for discrimination and retaliation claims, let alone whether termination of employment can be part of a continuing violation. Plaintiff's ACRA claims are best left to resolution in the state courts of Arkansas, and will be dismissed without prejudice.

IT IS THEREFORE ORDERED that Defendant's motion for summary judgment (Doc. 13) is GRANTED, and Plaintiff's Title VII, ADEA, and ADA claims are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Plaintiff's ACRA claims are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Defendant's motion in limine (Doc. 23) is DENIED AS MOOT.

IT IS SO ORDERED this 7th day of August, 2018.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE